UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| AHMED BAMUQABEL, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:11CV250 RWS |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

Ahmed Bamuqabel and Jamie Dorsey seek judicial review of the United States

Department of Agriculture's decision to prohibit their grocery store's participation in the

Supplemental Assistance Nutrition Program ("SNAP") for three years.  The Food and Nutrition

Service (FNS) administers the SNAP program and denied plaintiffs' application because it found

violations of the Food Stamp Act, 7 U.S.C. § 2011, et. seq., and its implementing regulations.

Specifically, FNS found that plaintiffs failed to comply with USDA's requests for information as

required by 7 C.F.R. § 278.1(b) and lacked the necessary business integrity and reputation

because they attempted to circumvent the permanent disqualification assessed against the owners

of the prior grocery store.  Defendant moves for summary judgment on the ground that the

USDA's determination was proper.  Plaintiffs oppose summary judgment and the issues are fully

briefed.  For the reasons that follow, I will grant defendant's motion for summary judgment.

Standards Governing Summary Judgment

"Summary judgment is proper 'if the pleadings, the discovery and disclosure materials on

file, and any affidavits show that there is no genuine issue as to any material fact and that the

movant is entitled to judgment as a matter of law.'"  Torgerson v. City of Rochester, 643 F.3d

1031, 1042 (8th Cir. 2011) (quoting Fed.R.Civ.P. 56(c)(2)).  The movant "bears the initial

responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] ... which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial." Torgerson, 643 F.3d at 1042 (internal quotation marks and citations omitted). "On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." Id. (internal quotation marks and citations omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150 (2000), (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," and must come forward with "specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Torgerson, 643 F.3d at 1042 (internal quotation marks and citations omitted) . With these standards in mind I review the undisputed facts in this case.

## Background Facts

On June 29, 2010, Arts Supermarket located at 2921 N. Newstead Ave. in St. Louis, Missouri was permanently disqualified as an authorized SNAP retailer for trafficking violations. The owners of record at the time of the disqualification were Eyad Mohammad, Adnan Hawija Al Abboud, Rami Mohammad, and Ghassan Hawji Al-Hamid. Plaintiffs claim to have purchased Arts Supermarket from Eyad Mohammad sometime thereafter. On August 19, 2010,

Arts Food Mart located at 2921 N. Newstead Ave., St. Louis, Missouri, submitted an application to participate in the SNAP program under the sole ownership of Jamie Lynn Dorsey; however, Dorsey testified that she had no involvement in the business because her husband, Bamuqabel, ran it.  Bamuqabel testified that he and Eyad Mohammad filled out the SNAP application together.  Although the August application included a Bill of Sale dated August 17, 2010 (and signed only by Eyad Mohammad), Bamuqabel testified that the sale actually occurred later.  The August application also included a copy of a three-year lease agreement for 2921 N. Newstead Ave. beginning August 15, 2010 for the amount of $4,500 per month between Eyad Mohammad as the landlord and Bamuqabel and Dorsey as tenants.  On August 31, 2010, USDA requested additional information from Arts Food Mart Inc. based on the permanent disqualification of Arts Supermarket at the same location and the involvement of a prior disqualified owner as lessor. Arts Food Mart, Inc. failed to respond to the request.

Instead, on September 10, 2010, Art Grocery (under the corporate name Art Grocery Inc.), located at 2925 (not 2921) N. Newstead Ave. submitted an application to participate in the SNAP program under the ownership of Dorsey and Bamuqabel.  Eyad Mohammad helped fill out this application, too.  The September application included a new lease agreement dated August 29, 2010.  It included the same basic terms as the other lease agreement, except that the monthly payment was increased to $5,000 and the address was listed as 2925, instead of 2921,  Newstead Ave.   2921 N. Newstead Ave. and 2925 N. Newstead Ave. are actually the same building and the same grocery store; the structure just has two doors.  Plaintiffs never made any lease payments to Eyad Mohammad.  During his deposition, Bamuqabel admitted that this agreement was drafted solely to respond to the USDA's request for information in connection with the

SNAP application.  Records from the City of St. Louis Assessor's Office indicate that 2921 and

2925 N. Newstead Ave. are owned by Adnan and Suhair Eyada Al-Abboud.[1]

Once again, on October 7, 2010, USDA requested additional information because of the

prior disqualification of Arts Supermarket and the continued involvement of previously

disqualified owner (Mohammad) as lessor.  In response, Bamuqabel sent a letter to USDA signed

by him but handwritten by Eyad Mohammad.  The letter states as follows:

> I am Ahmed A. Bamuqabel the owner of Art's Grocery Inc.  I am writing you this
> letter to inform you that I am applying for Food Stamp License under new
> corporation with new Tax I.D. number with new F.I.N. and new location 2925 N.
> Newstead Ave. so I am not a part of on-going investigation for Art's Supermarket
> at 2921 N. Newstead Ave.  I am at 2925 N. Newstead Ave.

On October 15,2010, FNS received some of the requested information, but the administrative

record reflects that it never received a notarized list identifying all persons working in the grocery

store, a copy of the bank account records reflecting the information for this new location,

documentation of the actual payment for store inventory and a copy of a lease signed by Abboud,

the actual owner of the building.  Although Bamuqabel claims that he provided bank account

information and a notarized employee list, he could not produce copies of any of these records

during discovery.[2]  In response to the request for inventory information, Bamuqabel provided

USDA with a one-page document entitled "Art's Food Mart 2921 N. Newstead, St. Louis, MO

63115 - Inventory Sheet."  This inventory sheet shows a total of $62,122.00 for grocery,

cigarettes, liquor, beer, wine and beauty supplies, with an unexplained discount of 20%, for a net

total of $48,797.60.  There is no indication on this document that any payments had been made

---

[1]This is also Adnan Hawija Al Abboub, another owner of the permanently disqualified
Arts Supermarket.

[2]The only bank account information in the record is for 2921 N. Newstead Ave.

by Bamuqabel for this alleged inventory.  However, there is a notation at the bottom of the document stating "will be paid on monthly basis after get the proper licenses."

In response to the request for a lease agreement signed by the owner of the building, Bamuqabel provided USDA with yet another lease agreement for the property, this time with Abboud, because USDA would not "accept" the lease agreements between Eyad Mohammad and plaintiffs.  The lease agreement between plaintiffs and Abboud is dated November 1, 2010 and provides that plaintiffs shall pay $2,000 per month to lease the premises at 2925 N. Newstead Ave.  However, as of February of 2012, Bamuqabel had yet to pay any rent to Abboud.  The lease also appears to have been signed by Ghassan Al-Hamid, not Abboud, on Abboud's behalf. Bamuqabel testified that Al-Hamid had power of attorney for Abboud, but no such document has been provided.

On October 1, 2010, plaintiffs entered into an agreement with Eyad Mohammad to purchase Arts Food Mart, Inc., the retail store at 2921 N. Newstead Ave., for $50,000.  The purchase agreement recites that the purchase price "was received in full" by the Mohammad. Despite that recital, Bamuqabel testified that so far he has only paid Mohammad $30,000 in cash for the store.  This payment is not recorded anywhere, and Bamuqabel claims he obtained the cash from his savings (even though he did not have a bank account as he was not a permanent resident) and family.   He has no records, however, of any of these transactions.  Bamuqabel said that they agreed on the purchase price because it was the same amount he offered to purchase another grocery store from Mohammad.  Bamuqabel agreed to pay Mohammad the remaining $20,000 balance once he is able to "straighten up" the licenses, including the ability to accept food stamps.  Bamuqabel still talks to Mohammad about this case "because there is money involved."

On November 4, 2010, USDA informed Arts Grocery Inc. that its request to participate in SNAP was denied because USDA determined that plaintiffs failed to comply with USDA's requests for information and lacked the necessary business integrity and reputation because their application was submitted in an attempt to circumvent the permanent disqualification assessed against Arts Supermarket under the ownership of Al Abboub, Mohammad, Al-Hamid and Rami Mohammad.  USDA concluded that,  under 7 C.F.R. § 278.1(k)(3)(iii), the denial should extend for a three-year period.  Upon administrative review, USDA concluded that "it is more likely true than not true that there was an attempt to circumvent a prior assessed permanent disqualification."  As such, the decision to deny Arts Grocery's participation in SNAP for three years was upheld.  Plaintiffs then filed the instant suit, seeking judicial de novo review of the administrative decision.

## Discussion

The Food Stamp Act and its regulations provide for judicial review of a decision by the Food Stamp Review Officer.  "The Food Stamp Act provides that issues of fact are to be tried de novo in the district court."  United States v. J & K Market Centerville, LLC, 679 F.3d 709 (8th Cir. 2012).  De novo review means that the Court "must make its own factual and legal conclusions based on the preponderance of the evidence, and should not limit its consideration to matters previously appraised in the administrative proceedings."  Sims v. U.S. Dept. Of Agriculture Food & Nutrition Service, 860 F.2d 858, 862 (8th Cir. 1988) (internal quotation marks and citation omitted).  Based on the record before the Court, the evidence establishes that defendant's three-year denial of authorization was supported by a preponderance of the evidence.

"When deciding whether a store is eligible to participate in SNAP, the FNS is governed by 7 U.S.C. § 2018, which provides that the FNS shall consider 'the business integrity and

reputation of the applicant.'" <u>J & K Market</u>, 679 F.3d at 709  (quoting 7 U.S.C. § 2018(a)(1)).

"The factors for admission to SNAP are set out in greater detail by section 2018's implementing

regulations, which are found in 7 C.F.R. § 278.1." <u>Id.</u>  "Firms for which evidence exists of an

attempt to circumvent a period of disqualification, a civil money penalty, or fine imposed for

violation of the Food Stamp Act of 1977, as amended, and program regulations shall be denied

for a period of three years from the effective date of the denial."  7 C.F.R. § 278.1(k)(3)(iii).

FNS permits new owners of a firm which has been disqualified to participate in the food stamp

program as long as the "transfer of ownership is bona fide."  FNS Handbook 318, Section 320,

part C.  To demonstrate a bona fide transfer of ownership, the applicant must provide a statement

that the previous owner and anyone else involved in the prior violations have no financial interest

in, and will not work for, the new firm.  The applicant must also provide documents such as a bill

of sale, conditional sales contract, or incorporation papers demonstrating a bona fide transfer of

ownership.

      The regulations also require that "an applicant shall provide sufficient data and

information on the nature and scope of the firm's business for FNS to determine whether the

applicant's participation will further the purposes of the program."  7 C.F.R. § 278.1(b).  In

addition, "[u]pon request, an applicant shall provide documentation to FNS to verify information

on the application."  7 C.F.R. § 278.1(b).  "Failure to comply with any request for information . .

. shall result in the denial of the application for authorization or withdrawal of a firm or concern

from the program."  7 C.F.R. § 278.1(b)(k).

      Here the undisputed facts demonstrate that there was no bona fide transfer of ownership

of the grocery store from Mohammad to plaintiffs and that plaintiffs were clearly attempting to

circumvent a prior permanent disqualification.  Plaintiffs produced not one, not two, but three

- 7 -

alleged lease agreements for the property in response to USDA's request for information.  The first two lease agreements list Mohammad as the lessor, yet he was not even the legal owner of the property.  Bamuqabel admitted that the second lease agreement dated August 29, 2010 was entered into solely for the purpose of responding to USDA's request for information.  Plaintiffs never paid any rent to Mohammad under these two rental agreements.  Plaintiffs submitted a third lease agreement for the property which lists Abboud (the owner of the property) as lessor.  However, this lease is not signed by Abboud.  It appears to have been signed by Ghassan Al-Hamid on Abboud's behalf.[3]  Although Bamuqabel believes that Al-Hamid had power of attorney for Abboud, he never provided me (or USDA) with any evidence supporting this assertion.  This lease agreement is dated November 1, 2010 and provides that plaintiffs shall pay $2,000 per month to lease the premises at 2925 N. Newstead Ave.  Again, Bamuqabel never paid rent to Abboud.

In addition, the alleged purchase of the store took place after plaintiffs already submitted two SNAP applications claiming to own it.  Moreover, the alleged purchase price was not based on a valuation of the store, but on Bamuqabel's offer to purchase another grocery store from Mohammad.  Most telling, however, is that fact that the alleged purchase price of $50,000 was not actually paid by Bamuqabel to Mohammad, despite the recitals to the contrary in the purchase agreement.  Instead, Bamuqabel claims to given Mohammad $30,000 in cash for the store, with the remaining $20,000 due once he "straightens up" the issue with the SNAP application.  In fact, Bamuqabel admitted that he talks to Mohammad about this case "because there is money involved."  As for the $30,000 in cash allegedly paid to Mohammad, Bamuqabel could produce no evidence of either the source or the receipt of the funds.  Instead, Bamuqabel

---

[3]Of course, Al-Hamid was also permanently disqualified.

claims he received unspecified amounts of cash from various family members to pay

Mohammad.  Even if plaintiffs' allegations were true, Mohammad and Al-Abboud -- both

permanently disqualified from participation in SNAP -- still retained vested financial interests in

the store through monthly lease payments and the remaining balance owed on the purchase price

of the store.   These undisputed facts demonstrate that there was no bona fide transfer of

ownership.

      The undisputed facts also demonstrate that plaintiffs were attempting to circumvent the

prior permanent disqualification.  In addition to the facts just discussed, I also note that the

second SNAP application, the August 29, 2010 lease agreement and the October letter (written

by Mohammad but signed by Bamuqabel) appear to be a deliberate attempt to mislead FNS into

thinking that plaintiffs' grocery store was not in the same location as the permanently

disqualified Arts Supermarket.  The second application used 2925 (not 2921) N. Newstead Ave.

as the address for Arts Grocery, Inc., and in his October letter Bamuqabel claims that his store is

at a "new location 2925 N. Newstead Ave. so I am not a part of on-going investigation for Art's

Supermarket at 2921 N. Newstead Ave.  I am at 2925 N. Newstead Ave."  Yet during his

deposition Bamuqabel admitted that his store was in the same location as Arts Supermarket,

which has two addresses because there are two doors in the building.  Bamuqabel admitted that

Mohammad was involved in the application process because he helped Bamuqabel fill out the

applications and wrote the October letter that Bamuqabel signed.   Based on all of these

undisputed facts, I find by a preponderance of the evidence that plaintiffs lacked the necessary

business integrity and reputation to further  the purposes of the Food Stamp Act as demonstrated

by their attempt to circumvent the permanent disqualification assessed against Arts Supermarket

and its owners and were properly denied participation in the program for three years.

In opposition to summary judgment, plaintiffs attempt to confuse the issue by arguing that their current grocery store, Art's Grocery, Inc., is somehow different than the Art's Grocery #1 mentioned in the administrative decision, and that it was not determined that Art's Grocery, Inc. attempted to circumvent a prior assessed permanent disqualification. This argument is patently meritless.  Any confusion over the name of the firm submitted by plaintiffs for the SNAP application was created by plaintiffs themselves submitting multiple applications with different corporate names.  The denial of authorization to participate in the SNAP program clearly applies to plaintiffs' current grocery store, whether referred to as Art's Grocery, Inc. or Art's Grocery #1. Moreover, as explained in the administrative decision, this typographical error regarding the name of the store is irrelevant to the issues surrounding the denial of authorization because the name of the store was not the reason the application was denied.

Plaintiffs' argument that application of 7 C.F.R. § 278.1(k) to Arts Grocery , Inc. would reduce the permanent disqualification of Arts Supermarket is equally unavailing.  As defendant correctly points out in its reply brief, the prior disqualification of Arts Supermarket remains in full force and effect and is not affected by Arts Grocery, Inc.'s denial of authorization to participate in the SNAP program.

Plaintiffs also argue that their store should not be denied participation in SNAP for three years because Mohammad currently has other stores in the SNAP program.  This type of argument has no support in the statute, accompanying regulations or caselaw and cannot form the basis for relief in this case.  Moreover, as defendant explains in its reply brief, other stores owned by Mohammad are not subject to automatic disqualification based  solely on the permanent disqualification of Arts Supermarket and Mohammad as its owner.

- 10 -

Finally, plaintiffs seek to supplement their opposition to summary judgment with information about Bamuqabel's application to be an authorized SNAP retailer for an entirely different store.  The motion will be denied because it relates to a different application that is currently pending before USDA and is not properly before this Court.  Plaintiffs may file a new lawsuit if and when USDA finally denies that application, but it is not part of the case before me.

Based upon the foregoing analysis, the record before this Court establishes by a preponderance of the evidence that defendant's decision to deny plaintiffs' participation in the food stamp program for three years was justified and not arbitrary or capricious as a matter of law.[4]

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment [#13] is granted, and plaintiffs' complaint is dismissed with prejudice.

**IT IS FURTHER ORDERED** that plaintiffs' motion to supplement [#22] is denied.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.


_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE


Dated this 27th day of July, 2012.

--------

[4]Because I am granting defendant's motion for summary judgment on this ground, I need not, and therefore do not, consider whether the alternative ground for denying participation in the program – namely, the failure to provide all requested documentation – was proper.